## Park Avenue Hospital v. Klees

*John F. Brennan*, for plaintiff.
*Robert E. Benion*, for defendant.

RANCK, *J.*, October 15, 1981—We are called upon by this case to determine the effect of the Equal Rights Amendment to the Pennsylvania Constitution[1] (hereinafter ERA) upon the common law duty of a husband to supply his wife with necessaries. No Pennsylvania court that has dealt with this issue has questioned that the ERA renders unconstitutional this centuries old doctrine.[2]

---

1. Pa. Const., Art. I §28: "Prohibition against denial or abridgment of equality of rights because of sex    Equality of rights under law shall not be denied or abridged in this Commonwealth of Pennsylvania because of the sex of the individual."

2. See Albert Einstein Medical Center v. Gold, 66 D. & C. 2d 347 (1974); Albert Einstein Medical Center v. Nathans, 27 Fiduc. Rep. 561 (1977).

We also adopt this result. Rather, the interesting question in this case is whether the ERA now requires a woman to be equally liable for her husband's necessaries or whether instead it demands that a man be equally not liable for his wife's necessaries.

Plaintiff's complaint alleges that services were rendered to defendant Richard A. Klees valued at $1,512.90, that the charges were for hospital care and maintenance of defendant Richard A. Klees, and that plaintiff's demands of payment have been refused. The complaint concludes with a request for the sum due of both defendant Richard A. Klees and his wife, Cora Klees. Preliminary objections to the complaint were filed asserting that the joinder of defendant Cora Klees constitutes the misjoinder of a party in that the complaint alleges no basis for her liability.

In briefs and at oral argument the positions of the parties were made clear. Plaintiff maintains that the ERA extends a duty to support the husband to the wife and by implication argues that a judgment against them jointly would be proper, should the case be decided in its favor on the merits. Defendants have countered, asserting that a more sound result requires that the husband's duty to supply necessaries be eradicated so that the two spouses may be treated equally.

The issue has been dealt with twice previously by courts of this Commonwealth. In Albert Einstein Medical Center v. Gold, 66 D. & C. 2d 347 (1974), the court was faced with a situation identical to the present case: a wife had filed preliminary objections to a complaint alleging liability on behalf of herself and her husband for necessaries furnished to her husband. In Albert Einstein Medical Center v. Nathans, 27 Fiduc. Rep. 561 (1977), the situation was reversed. There, a husband raised

preliminary objections to a complaint which alleged his liability under the common law rule for medical necessities furnished his wife. Both courts agreed that the ERA affected the common law doctrine, but they could not agree on what the effect was. In Gold, the court held that the wife could not assert as a defense that she is never legally obligated for medical expenses incurred by her husband, and thus extended to her a duty to supply necessaries to her husband, although the scope and extent of that duty was not defined. In Nathans, the court held that it was merely empowered to decide the constitutionality of the law. If the law were declared unconstitutional, it was beyond the court's power to construct new law in its place, i.e., for it to extend the common law duty to supply necessaries to a wife. Thus, the result in Nathans was that neither the husband nor the wife owed legal duties of support to one another due to the marital relationship.

## I.

The rationale behind the decision in Nathans raises the preliminary question of exactly what is the scope of a court's authority when deciding cases of this nature. The court in Nathans was adamant that for it to extend a duty to the wife would be to go far outside the scope of its powers, and stated at pp. 566-67:

"Judicial power is power to declare what the law is in a particular factual situation and to determine the rights of the parties conformably thereto, (Nesbit v. Riesenman, 298 Pa. 475, 148 A.30: C.J.S., Constitutional Law, §14; 17 P.L.E., Constitutional Law, §51): and not to declare new law. In Marbury v. Madison, 1 Cranch 133, 2 L.Ed. 60 (1803), Chief

Justice Marshall laid down the rule for the exercise of judicial power in a thorny question of conflict of laws: 'If a law be in opposition to the Constitution; if both the law and the Constitution apply to a particular case, so that the Court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregarding the law, the Court must determine which of these conflicting rules governs the case . . .'

"It is in conformity with these expressed tenets that I exercise the judicial power of the court. The rule of law upon which plaintiff relies to sustain his cause of action to recover for medical services rendered to the wife of the defendant-husband is unconstitutional. Ergo, the demurrer which challenges the sufficiency of such a pleading must be sustained. To adjudicate beyond this point is to delve in an area of the law reserved to the legislature, delve in speculation and dicta that it is not necessary to resolving the issue presented."

We cannot agree with the overly restrictive analysis of the court in Nathans. While the case cites to none other than Marbury v. Madison, 5 U.S. 137, 1 Cranch 133, 2 L.Ed. 60 (1803), for its authority, its reliance on Marbury is out of context. In Marbury the United States Supreme Court declared unconstitutional a statute enlarging the original jurisdiction of the Supreme Court to include mandamus actions. The original jurisdiction of the court was expressly limited in article III, §2 of the U. S. Constitution, and the Act of Congress adding mandamus to that jurisdiction was patently contrary to the Constitution. The Supreme Court was confronted then, with determining whether or not a court possessed the power to declare a law unconstitutional if the law was found to be in conflict

with the Constitution. Chief Justice Marshall employed strong language to assert that indeed courts do have the power to declare a law unconstitutional. This language in Marbury was not designed however to place limits on the powers a court may exercise when declaring a law unconstitutional as Nathans asserts. Rather, it establishes the general power itself to declare a law unconstitutional. Therefore, we find that Nathans' reliance on Marbury is somewhat misplaced.

We cannot accept the result in Nathans for another reason. In Marbury, the court declared a *statute* unconstitutional and perhaps arguably, a court in that instance may indeed do nothing more than strike the offending statute. Here, however, the challenge is to a common law doctrine which itself was created by the *courts*, not by a legislature. There is no need to be cautious of the legislature's prerogative in cases such as these. Indeed, it is not even necessary to allege a constitutional defect in the common law before a court can take the initiative to alter it.

Finally, as a matter of equal protection-type constitutional analysis courts have not as a rule necessarily struck down the offending law without also inquiring as to the relative merits of the competing means of equal treatment.[3] Therefore, based upon the preceding discussion, we conclude that it is within this court's power, in an appropriate case, to extend the burdens or benefits of a common law doctrine invalidated under the ERA. Our inquiry now focuses upon whether this is such an appropriate case.

3. See the discussion in Brown, Emerson, Falk and Freeman, The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.J. 871, 912 (1971).

## II.

The first step we take is to examine the common law duty of the husband to identify precisely what it is and to examine why it exists. At common law, the husband had a duty to maintain and support his wife and children with the necessities of life. The doctrine has been stated thusly: "A husband is under a legal duty to support his wife and children, and where he neglects this duty, one who supplies necessaries for their support may recover their cost in an action under the common law, which raises an implied promise, on the part of the husband, to pay." Gessler v. Gessler, 181 Pa. Superior Ct. 357, 361, 124 A. 2d 502 (1956). See also Adler v. Adler, 171 Pa. Superior Ct. 508, 90 A. 2d 389 (1952). The rationale behind the husband's duty imposed by law was stated by the court in Nathans, 27 Fiduc. Rep. at 565:

"The common law duty of the husband to pay for the necessities furnished his wife was based upon the feudal-medieval concept that he was the head of the family and therefore responsible for the needs of those who were dependent upon him for life's necessities. An overbearing cycle of successive pregnancies, births, and child-rearing and her physical handicaps, in a machineless age that depended on muscular labor, made her unavailable for work outside the home."

The doctrine was based then upon the desire that the financially productive half of the economic unit created by the marriage be responsible for providing the necessities of life to the other half of that unit. Yet, the common law was not only concerned with imposing duties of support on the party with the deepest pockets, but also considered who ought

to pay. It recognized that the husband was *benefited* when necessaries were supplied to those in his family and this is the basis of the husband's implied promise to pay: Adler, 171 Pa. Superior Ct. at 511; Gessler, 181 Pa. Superior Ct. at 361.

Thus, because the common law was concerned with the ability of members of the family to obtain necessary support, it looked to the husband, who played the dominant economic role in society. Today, because of the requirements of the ERA we cannot continue to make this distinction, as it is based solely upon the sex of those involved. However, this does not mean that we will drop all concern for the non-earning members of a marriage, be they men or women. The common law rule was not so much that the husband must pay because the wife could not, but that *someone* from the financial unit must pay, and the husband was traditionally the only one to qualify. The concern that *someone* must pay is just as legitimate today as it was hundreds of years ago. When a spouse is supplied with the necessaries of life, his or her marital partner is also benefited, and therefore, both ought to be liable for them.

### III.

By extending to the wife a duty to support her husband, we are not merely applying the common law duty of a husband to her. The rule at common law was that the husband was *primarily* responsible for necessaries furnished his wife. If we were to simplisticly extend this duty to women, it would mean that each spouse is primarily responsible for the other, surely a nonsensical result. Rather, the rule we construct today to replace the original one is that each spouse is primarily responsible for

necessaries furnished himself or herself, and is secondarily liable for those furnished to their marital partner.

This is a result which the Supreme Court of New Jersey recently reached in a case similar to the one at bar: Jersey Shore Medical Center—Fitkin Hospital v. Estate. of Baum, 84 N.J. 137, 417 A. 2d 1003, 1010 (1980). There, the court stated:

"In a viable marriage, the marital partners can decide between themselves how to pay their debts. A creditor providing necessaries to one spouse can assume that the financial resources of both spouses are available for payment. However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient.

"Normally a person is not liable for the debt of another in the absence of an agreement. The imposition of liability based on marital status alone is an exception to that rule. Nonetheless, it is a justifiable exception. The reasonable expectations of marital partners are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse. However, it would be unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses. In the absence of such an agreement, a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient. Marshalling the marital resources in that manner grants some protection to

a spouse who has not expressly consented to that debt."

Moreover, this result is consistent with the opinion of our own Supreme Court in Conaway v. Dana, 456 Pa. 536, 318 A. 2d 324 (1974). In Conaway the court held that the presumption that a father must principally bear the burden of supporting the children of a marriage is violative of the ERA. The court stated at p. 540:

"We can best provide for the support of minors by avoiding artificial division of the panoply of parental responsibilities and looking to the capacity of the parties involved. Support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. Both must be required to discharge the obligation in accordance with their capacity and ability."

Likewise, the decision reached in this case today avoids "artificial divisions," providing rather for liability with regard to "capacity and ability."

Therefore, the joinder of Cora Klees as a defendant does not constitute the misjoinder of a party. If plaintiff prevails on the merits of its case it may look to defendant Cora Klees' assets secondarily to satisfy the judgment.

We, therefore, enter the following

## ORDER

And now, October 15, 1981, after due consideration of written and oral argument of counsel, it is ordered and directed that the preliminary objection of Cora Klees is hereby denied.

Defendant Cora Klees shall have 20 days from the filing of this order to file a responsive pleading.